# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# ELKINS

**JOSHUA WINCE, DELIA LOFTIS, and
CARLTON WHITE, individually and
on behalf of all others similarly situated,**

    Plaintiffs,

v.                                                                   CIVIL ACTION NO. 2:09-CV-135
                                                                  (BAILEY)

**EASTERBROOKE CELLULAR
CORPORATION; NEW CINGULAR WIRELESS
PCS, LLC; AT&T MOBILITY II LLC; AT&T
MOBILITY, LLC; AT&T INC.; and
JOHN DOES 1 THRU 10,**

    Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION PURSUANT TO THE FEDERAL ARBITRATION ACT

Currently pending before this Court is Defendants' Motion to Compel Arbitration Pursuant to the Federal Arbitration Act [Doc. 8], filed December 4, 2009. Plaintiffs responded on January 11, 2010, and Defendants replied on January 25, 2010. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that Defendants' motion should be **GRANTED**.

## BACKGROUND

This case involves a putative class action containing breach of contract and West Virginia Consumer Credit and Protection Act ("WVCCPA") claims against, *inter alia*, several AT&T entities, including AT&T Mobility ("ATTM"). The Complaint [Doc. 1-1] was originally filed in the Circuit Court of Randolph County, West Virginia, on August 31, 2009, by

1

Plaintiffs Joshua Wince ("Wince"), Delia Loftis ("Loftis"), and Carlton White ("White"). The defendants removed the action to this Court on November 13, 2009 [Doc. 1] pursuant to the Class Action Fairness Act ("CAFA"). On December 4, 2009, the defendants filed the motion to compel arbitration [Doc. 8] that is the subject of this decision.

**The Named Plaintiffs**

Plaintiff Wince became an ATTM customer in March 2008, when he activated two cellular phone lines with ATTM. ([Doc. 1-1] at 3). During that transaction, Wince accepted the terms of ATTM's wireless service agreement by signing his name on an electronic signature-capture device. ([Doc. 8] at 2). This service agreement expressly incorporated the "binding arbitration clause" of "AT&T's current Terms and Conditions Booklet . . .." (Id. at 3). More than a year later, on April 15, 2009, Wince purchased an iPhone for use on a new telephone line in his account with ATTM. (Id.). Again, during that transaction, Wince accepted the then-current terms of ATTM's service agreement by signing his name on an electronic signature-capture device. (Id.). Similarly, this service agreement also expressly incorporated the "binding arbitration clause" in "AT&T's current Terms of Service Booklet . . .." (Id.).

Plaintiff Loftis became an ATTM customer on June 17, 2008, after she purchased a wireless phone and activated it for use with ATTM's GoPhone service, i.e., ATTM's prepaid or "pay as you go" wireless service. ([Doc. 8] at 4). When she obtained GoPhone service at an ATTM retail store, Loftis would have received a then-current GoPhone User Guide, which included ATTM's then-current GoPhone Terms of Service. (Id.). Those GoPhone service terms include an arbitration clause. (Id.).

Plaintiff White at no time became an ATTM customer. As a result, Plaintiff White's

2

claims are not the subject of this motion or this Court's ruling thereupon.  Accordingly, this case involves only the ATTM arbitration agreements of Plaintiffs Wince and Loftis.

**The ATTM Agreements**

The agreements entered into by Plaintiffs Wince and Loftis each contained substantially similar arbitration clauses requiring them and ATTM "to arbitrate all disputes and claims between us" or pursue such disputes in small claims court.  These clauses cover disputes involving not only ATTM but also all its "subsidiaries, affiliates, agents, employees, predecessors in interest, successors and assigns."  Moreover, each clause requires arbitration on an individual rather than a class-wide basis.  Finally, these clauses contain many of the same incentives for entering arbitration.  For example, ATTM has committed to pay all of the costs of arbitration whether a customer wins or loses, provided the claim comports with Rule 11(b) of the Federal Rules of Civil Procedure.  If a customer prevails in arbitration, he or she may obtain the same remedies – including compensatory, punitive, and statutory damages; injunctive and declaratory relief; and attorneys' fees – that are available in court.  In addition, if the arbitrator awards the customer an amount greater than ATTM's last settlement offer, ATTM must pay him a substantial minimum recovery, plus double attorneys' fees.

**DISCUSSION**

**I.      Federal Arbitration Act**

Defendants rely upon the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, in support of their motion to compel arbitration.  Specifically, section 2 of the FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon

3

such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

A party can compel arbitration by establishing: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of the defendant to arbitrate the dispute. See **American General Life & Accident Ins. Co. v. Wood**, 429 F.3d 83, 87 (4th Cir. 2005) (citing **Adkins v. Labor Ready, Inc.**, 303 F.3d 496, 500-01 (4th Cir. 2002)).

Generally, "[t]he FAA reflects 'a liberal federal policy favoring arbitration agreements.'" **Adkins,** 303 F.3d at 500 (quoting **Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.**, 460 U.S. 1, 24 (1983)). Indeed, the FAA serves as "a response to hostility of American courts to the enforcement of arbitration agreements, a judicial disposition inherited from then-longstanding English practice." **Circuit City Stores, Inc. v. Adams**, 532 U.S. 105, 111 (2001). Moreover, a court is required to "resolve 'any doubts concerning the scope of arbitrable issues ... in favor of arbitration.'" **Hill v. PeopleSoft USA, Inc.**, 412 F.3d 540, 543 (4th Cir. 2005) (quoting **Moses H. Cone Mem'l Hosp.**, 460 U.S. at 24-25).

Finally, there is one important caveat to the reach of the FAA. "Although federal law governs the arbitrability of disputes, ordinary state-law principles resolve issues regarding the formation of contracts. **Hill,** 412 F.3d at 543 (citing **First Options of Chicago, Inc. v. Kaplan,** 514 U.S. 938, 944 (1995); **Moses H. Cone Mem'l Hosp.,** 460 U.S. at 24). For example, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening

4

§ 2" of the FAA. See **Doctor's Assocs., Inc. v. Casarotto**, 517 U.S. 681, 687 (1996) (citations omitted).

## II. Analysis

### A. ATTM Arbitration Clauses Challenged as Unconscionable

Plaintiffs Wince and Loftis dispute the existence of only one of the four prerequisites for compelling arbitration, namely, whether an enforceable arbitration provision exists under general principles of contract law. Specifically, Wince and Loftis challenge the arbitration clause as unconscionable, a generally applicable contract defense.

#### 1. Class Action Restriction

Plaintiffs Wince and Loftis cite as the "most troubling unconscionability" the provision prohibiting the option to bring a class action. For the reasons explained below, this Court upholds the class action restriction as valid pursuant to the applicable state and federal law.

##### i. West Virginia Law

In West Virginia, unconscionability requires both "gross inadequacy in bargaining power," and "terms unreasonably favorable to the stronger party." See **Adkins**, 303 F.3d at 502. However, "a finding that the transaction was flawed . . . still depends on the existence of unfair terms in the contract. A litigant who complains that he was forced to enter into a fair agreement will find no relief on grounds of unconscionability." **Id.** (internal citations and quotations omitted). Therefore, this Court will focus on the second element of unconscionability, i.e., whether the class action restriction is an unfair term.

Plaintiffs Wince and Loftis argue that the class action restriction is an unfair term. In so arguing, they rely upon **State ex rel. Dunlap v. Berger**, 211 W.Va. 549, 567 S.E.2d

5

265 (2002). **Dunlap** involved an alleged deceptive and illegal loan packing scheme. Dunlap was illegally charged $1.48 for credit life insurance and $6.96 for property insurance. Dunlap instituted an action alleging state statutory and common-law claims. He sought certification of a class of similarly situated aggrieved former employees. The circuit court compelled arbitration pursuant to the parties' form agreement executed at the time of Dunlap's purchase. In reversing the circuit court, the Supreme Court of Appeals of West Virginia held:

> [E]xculpatory provisions in a contract of adhesion that if applied would prohibit or substantially limit a person from enforcing and vindicating rights and protections or from seeking and obtaining statutory or common-law relief and remedies that are afforded by or arise under state law that exists for the benefit and protection of the public are unconscionable; unless the court determines that exceptional circumstances exist that make the provisions conscionable.

**Dunlap**, 567 S.E.2d at 275.

In finding the provision prohibiting class action relief "clearly unconscionable", the **Dunlap** court emphasized that Dunlap's case involved "precisely the sort of small-dollar/high volume (alleged) illegality that class action claims and remedies are effective at addressing." *Id.* at 562. As a result of this emphasis, federal district courts in West Virginia have ordered arbitration in the face of class action restrictions by factually distinguishing **Dunlap** on this basis. See **Schultz v. AT&T Wireless Services, Inc.**, 376 F.Supp.2d 685 (N.D. W.Va. 2005) (recognizing that "the plaintiff's claim cannot be considered "small dollar" and the plaintiff can effectively and cost-efficiently vindicate his rights through arbitration. For this reason, the facts of this case do not appear to implicate the holding in **Dunlap**.") and **Strawn v. AT&T Mobility, Inc.**, 593 F.Supp.2d 894 (S.D. W.Va. 2009) (noting that

6

"[a]s in *Schultz*, Strawn and Staton are not asserting high volume/low dollar claims . . . [and] [t]hus, as in *Schultz*, the decision in *Dunlap* is distinguishable.").

In the instant case, only the defendants, in their Notice of Removal, calculate a possible dollar amount for the plaintiffs' claims. In alleging that the plaintiffs' claims satisfy the requirements of the CAFA,[1] the defendants estimate that each putative class member seeks at least $400.00,[2] which adjusted for inflation would exceed $1,700.00. The defendants base this estimate upon: (1) the plaintiffs' allegation that each class member was subjected to at least two separate acts or practices prohibited by the WVCCPA; and (2) the WVCCPA provides for recovery of actual damages or $200.00, whichever is greater, for each act in violation of the WVCCPA.

Therefore, like in *Schultz* and *Strawn*, this case could possibly be distinguished from *Dunlap* purely on a quantitative basis. However, this Court need not distinguish *Dunlap* based upon a high dollar/small dollar distinction.[3] Instead, this Court finds *Dunlap* not to be implicated because the ATTM arbitration clause, as a whole, comports with the heart of the *Dunlap* decision.

---

[1]Federal jurisdiction can be based upon the CAFA, only if: (1) the class action includes more than 100 class members; (2) the aggregate amount in controversy exceeds $5 million; and (3) any member of the class of plaintiffs is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d).

[2]The defendants then multiplied this amount by the purported class of 19,000 individuals, equaling $7,600,000.00, and thus satisfying the amount in controversy requirement. (See [Doc. 1] at 5).

[3]In addition to this distinction being unnecessary, this Court also notes that *Dunlap* failed to explain where to draw the line between "high" and "small" dollar claims. Thus, this Court elects not to arbitrarily draw such a line, and even more arbitrarily, find this line dispositive of the unconscionability issue.

Most important for the ***Dunlap*** court was whether a particular arbitration provision represented the type of "exculpatory provision . . . that if applied would prohibit or substantially limit a person from enforcing and vindicating [his] rights . . .." See ***Dunlap***, 567 S.E.2d at 275. Next, in finding that the class action restriction was such a provision, the ***Dunlap*** court emphasized the "small dollar" nature of the plaintiff's claim to illustrate that putative class members would have no incentive to bring a small claim on an individual basis. See ***Id.*** at 562.

Here, however, each putative class member has incentive to bring his or her claim, regardless of whether classified as "high" or "small" dollar. This incentive is provided by several provisions of the ATTM arbitration clause. First, with limited exceptions, ATTM has committed to pay all of the costs of arbitration whether a customer wins or loses. Second, if a customer prevails in arbitration, he or she may obtain the same remedies – including compensatory, punitive, and statutory damages; injunctive and declaratory relief; and attorneys' fees – that are available in court. Finally, if the arbitrator awards the customer an amount greater than ATTM's last settlement offer, ATTM must pay him $10,000.00[4], plus double attorneys' fees. Therefore, in light of these remaining incentives, the class action restriction cannot be deemed unfair. Accordingly, the plaintiffs' defense of unconscionability based upon that provision fails pursuant to West Virginia law, and especially a narrow reading of ***Dunlap***.

---

[4]Although the contract for Loftis provides for a $5,000.00 minimum payment, as part of its policy announced on its website, ATTM has extended the benefits of the $10,000.00 premium to all current and former customers. (See [Doc. 8] at 7). However, either amount provides incentive.

8

### ii. Federal Arbitration Act

Moreover, even if a broader reading of **Dunlap** was applicable in this case, this Court finds that the FAA preempts **Dunlap** to the extent it would invalidate plaintiffs' waiver of the right to pursue class action relief. In so holding, this Court joins the opinion of the Honorable Judge Frederick P. Stamp, Jr. in the **Schultz** decision. *See* **Schultz**, 376 F.Supp.2d at 691. Specifically, Judge Stamp found the holding in **Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Coe**, 313 F.Supp.2d 603 (S.D. W.Va. 2004) to be "persuasive." *Id.* **Coe** held that the application of the **Dunlap** decision has the effect of targeting arbitration clauses:

> When parties agree to resolve their disputes through arbitration, they concomitantly agree to *not* resolve their disputes by going to court. Thus, a rule imposing heightened requirements on "agreements not to go to court" necessarily imposes heightened requirements on "agreements to go to arbitration." Because the Act requires that arbitration agreements be on the same legal footing as "any contract," such a rule would be preempted by the Act as it applied to prevent the enforcement of otherwise valid agreements to arbitrate.

**Coe**, 313 F.Supp.2d at 615 (emphasis in original).

Applying this analysis to the instant case, this Court finds that a broad reading of **Dunlap** that sweepingly invalidates arbitration provisions containing class waivers, no matter the remaining incentives to arbitrate, would "stand[] as an obstacle to the accomplishment and execution of the full purposes and objective of Congress" in enacting the FAA and would be preempted under the doctrine of conflict preemption. **United States v. Locke**, 529 U.S. 89, 109 (2000) (internal quotations and citations omitted).[5] Thus, the

---

[5]It is also noteworthy that there are a number of decisions from federal courts of appeal, including the Fourth Circuit, in which a class waiver in this context has been upheld.

9

plaintiffs' argument that the arbitration clause is unconscionable due to its foreclosure of class action relief lacks merit.

## 2. Other Challenges of Unconscionability

Plaintiffs Wince and Loftis also argue that their ATTM arbitration clauses are unconscionable on grounds other than the class action restriction. First, the plaintiffs claim the ATTM's service agreements contain unconscionable provisions limiting ATTM's liability. Next, the plaintiffs assert that ATTM's expansive definition of "AT&T" in the arbitration clause is unconscionable. Finally, the plaintiffs argue that another provision in the arbitration clause improperly applies arbitration retrospectively. However, as explained below, this Court finds each challenge without merit.

First, with regard to the liability-limiting provisions, the plaintiffs challenge a limitation period for filing certain claims; a warranty disclaimer; and a provision that, in some circumstances, limits ATTM's liability. In response, the defendants correctly point out the irrelevance of these challenges to the Court's consideration of the instant motion. This is because it is well established that, "if a party seeks to avoid arbitration and/or a stay of federal court proceedings pending the outcome of arbitration by challenging the validity or enforceability of an arbitration provision on any grounds that 'exist at law or in equity for the

---

***Adkins***, 303 F.3d 503 (upholding a court's decision that plaintiff's inability to pursue class action relief in an arbitration proceeding did not render the arbitration agreement invalid); ***Snowden***, 290 F.3d 631 (rejecting argument that arbitration agreement was unenforceable due to inability to bring class action); *see also* ***Pleasants v. American Exp. Co.***, 541 F.3d 853, 859 (8th Cir. 2008); ***Gay v. CreditInform***, 511 F.3d 369, 395 (3d Cir. 2007); ***Jenkins v. First Am. Cash Advance***, 400 F.3d 868, 878 (11th Cir. 2005); ***Livingston v. Associates Fin., Inc.***, 339 F.3d 553, 559 (7th Cir. 2002); ***Randolph v. Green Tree Fin. Corp.***, 244 F.3d 814, 818 (11th Cir. 2001). *But see* ***Lowden v. T-Mobile USA, Inc.***, 512 F.3d 1213, 1221, n.3 (9th Cir. 2008).

revocation of any contract' 9 U.S.C. § 2, the grounds 'must relate specifically to the arbitration clause and not just to the contract as a whole.'" ***Snowden v. CheckPoint Check Cashing***, 290 F.3d 631, 636 (4th Cir. 2002) (quoting ***Hooters of Am., Inc. v. Phillips***, 173 F.3d 933, 938 (4th Cir. 1999)). In fact, "when claims allege unconscionability of the contract generally, these issues are determined by an arbitrator because the dispute pertains to the formation of the entire contract, rather than the arbitration agreement." ***Syndor v. Conseco Fin. Servicing Corp.***, 252 F.3d 302, 305 (4th Cir. 2001). Accordingly, any challenge to these liability-limiting provisions must be raised before an arbitrator.

The next two challenges refer to the provisions necessary to argue that the plaintiffs' claims against defendants other than ATTM are also subject to arbitration. First, each arbitration clause provides that:

> References to "AT&T," "you" and "us" include our respective subsidiaries, affiliates, agents, employees, predecessors in interest, successors and assigns, as well as all authorized or unauthorized users or beneficiaries of services or equipment under this or prior Agreements between us.

([Doc. 8-3] at 40) ([Doc. 8-4] at 31).

Second, each arbitration clause also provides that arbitration covers "claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising)." Based upon these two provisions, Wince and Loftis argue that the arbitration clause is unfair, and thus, unconscionable. This Court disagrees. The plaintiffs present absolutely no authority, case law or otherwise, to support their argument, and this Court is unable to find that any exists. Moreover, like the class action provision, these provisions do not "prohibit or substantially limit" the vindication of the plaintiffs' rights, especially in light of the above-discussed incentives to enter arbitration. Accordingly, this Court finds no

merit in the argument that these provisions are unconscionable.

### B. ATTM Service Agreements Challenged on Grounds Other than Unconscionability

Finally, Plaintiffs Wince and Loftis claim that the "gravamen" of their Complaint is that they were fraudulently induced to enter into the ATTM service agreements in the first place. Again, however, the defendants correctly argue that the claim of fraudulent inducement is a question for an arbitrator. Indeed, "[a]s early as 1967, the Supreme Court held that a claim of fraud that related to inducement of an agreement generally is covered by an 'arising out of or relating to this agreement' arbitration clause." ***Long v. Silver***, 248 F.3d 309, 318 (4th Cir. 2001) (quoting ***Prima Paint Corp. v. Flood & Conklin Mfg. Co.***, 388 U.S. 395, 406 (1967)). As in ***Prima Paint***, Wince and Loftis have entered into arbitration agreements of broad scope, and thus, the FAA "does not permit the federal court to consider claims of fraud in the inducement of the contract generally." ***Buckeye Check Cashing, Inc. v. Cardegna***, 546 U.S. 440, 445 (2006) (quoting ***Prima Paint***, 338 U.S. at 403-04)). In other words, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." ***Id.*** at 445-46. Accordingly, the plaintiffs' claim of fraudulent inducement is to be decided by an arbitrator.

### CONCLUSION

For the reasons stated above, this Court finds that Defendants' Motion to Compel Arbitration Pursuant to the Federal Arbitration Act [Doc. 8] should be, and hereby is, **GRANTED**. Accordingly, insofar as it alleges the claims of Plaintiffs Wince and Loftis, the Complaint [Doc. 1-1] is **DISMISSED without prejudice**.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record herein.

**DATED:** February 2, 2010.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE